Settle order on notice.

---

TALCOTT v. SLATER BROS. CLOAK & SUIT CO.

(Supreme Court, Appellate Division, First Department.    February 18, 1916.)

1. SALES ⬯201—EXECUTED CONTRACT—TRANSFER OF TITLE.

Where the seller on August 29th sold to the buyer's representative certain goods, with a discount of 10 per cent. upon payment within 30 days from September 15th, and agreed that the goods were to be held in the seller's warehouse subject to the buyer's orders, and that any goods paid for after October 15th were to be still subject to the 10 per cent. discount less interest at 6 per cent. on the purchase price from that date to the date of payment, the transaction was an executed sale, and title to the goods then passed to the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 529–541; Dec. Dig. ⬯201.]

2. SALES ☞87—ACTION FOR PRICE—SUFFICIENCY OF EVIDENCE—TERMS OF CREDIT.

In an action for the balance due upon goods sold, evidence *held* to sustain a finding that the buyer was to be allowed a credit of $12,000, and that the seller was to deliver the goods on demand until the buyer's indebtedness for goods actually delivered was equal to the credit limit.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 239–247, 1046; Dec. Dig. ☞87.]

3. SALES ☞117—REFUSAL TO DELIVER—REMEDIES OF BUYER.

On the seller's breach of his contract by refusing to deliver the quantity of goods demanded by the buyer, the buyer might rescind the sale as to the undelivered goods.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 291; Dec. Dig. ☞117.]

4. SALES ☞404—BREACH—REMEDIES OF BUYER—DAMAGES.

In such case the buyer might continue with the contract and recover damages for the seller's failure to deliver in time.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1146; Dec. Dig. ☞404.]

5. SALES ☞121—REMEDIES OF BUYER—RESCISSION—WAIVER.

A buyer, who on the seller's failure to deliver goods on demand did not elect to rescind the sale, but demanded further deliveries under the contract, and accepted a subsequent delivery, and regarded the contract as still in force, thereby waived the seller's previous breach of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. ☞121.]

Appeal from Trial Term, New York County.

Action by James Talcott against the Slater Bros. Cloak & Suit Company. From a judgment for defendant, entered upon the verdict of a jury, and from an order denying a motion for a new trial, plaintiff appeals. Judgment and order reversed, and new trial granted.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

Augustus L. Richards, of New York City, for appellant.
Alex. B. Greenberg, of New York City, for respondent.

PAGE, J. [1, 2] The action is to recover a balance of $6,565.65 alleged to be due and unpaid upon the sale of goods to the defendant by the plaintiff. It was shown conclusively at the trial by the evidence of both parties that on August 29, 1913, the defendant's representative called at the plaintiff's place of business and bought 280 pieces of chinchillas of a total value of $14,988.40, upon "terms September 15, 10/30," which meant that defendant was entitled to 10 per cent. discount upon payment within 30 days from September 15th. It was also agreed that the goods were to be held in plaintiff's warehouse subject to defendant's orders, and that any goods paid for after October 15th were to be still subject to the 10 per cent. discount less interest at 6 per cent. on the purchase price from October 15th to the date of said payment.

The only conflict in the case relates to the terms of credit and was a very sharply contested one. Plaintiff's witnesses testified that the defendant was given no definite line of credit, but, on the contrary,

all deliveries were to be subject to the approval of Spalding, plaintiff's credit man, depending in each instance upon whether at that particular time plaintiff had allowed defendant as much credit as he was willing to risk. The defendant's witnesses, on the other hand, claimed that the plaintiff agreed to a maximum credit margin of $12,000.

Various demands for delivery of the goods were made from time to time during September, October, and November, and a large portion of the goods was delivered pursuant thereto. Each shipment was approved by Spalding as to credit before it was delivered to defendant, and during September and October Spalding refused to honor some of the defendant's demands for the goods, until defendant had reduced his indebtedness by payment on account of prior deliveries within what he considered a safe margin of credit. Defendant made protest of unfair treatment at not receiving his goods when demanded, but proceeded thereafter to make payments and accepted subsequent deliveries without complaint and without taking any steps to rescind the contract. On November 3d defendant demanded and received a delivery of nine cases of the goods which was the last delivery made, and the largest single delivery, under the contract. No more goods were taken by the defendant, and on December 5th Spalding, both personally and by letter, requested defendant to receive and pay for the balance of the goods on hand. The defendant refused so to do, saying:

"I am never going to take those goods. * * * The season is over, and I have had to go out and fill orders by purchasing goods elsewhere, because you wouldn't send the goods to me without money."

The plaintiff then was holding goods for the defendant subject to orders, amounting to $6,565.65. It notified defendant that the goods were placed in storage for its account and commenced this action for the balance of the purchase price. It seems clear from the testimony of both the plaintiff's and defendant's witnesses that the transaction was an executed sale and title to the merchandise passed to the defendant on August 29th. This is the theory upon which the plaintiff rests his case, and the defendant's principal witness, Samuel T. Slater, testified that after inquiring the price, colors, and amount of the goods he said:

"All right. Then the goods is mine at $1.60 for the colors and $1.67½ for the brown. I want to take them in during the months of September and October and the early part of November."

He was then told to see Spalding and arrange about credit and payments, which he did, and the goods were charged to defendant, invoices for the entire purchase were sent to defendant and the goods were held subject to defendant's orders. The merchandise was then the property of the defendant subject to plaintiff's right to hold it until payment of the purchase price was made pursuant to the terms of credit arranged between them.

Accepting the facts to be as the jury have found, the terms of credit and delivery were that the defendant was to be allowed a credit of $12,000, and plaintiff was to deliver the goods to defendant when de-

manded, so long as the delivery demanded would not place defendant in debt to the plaintiff for goods actually delivered, in a sum exceeding the credit limit of $12,000. The defendant's claim is that at various times during September and October demand was made upon the plaintiff to deliver the goods, and these demands were unjustifiably refused unless certain payments were made, which defendant was unable to make, and that for these breaches the defendant was entitled to refuse to receive the balance of the goods. The specific breaches testified to were: First, about September 17th, when defendant demanded 15 cases and received only 2; second, between September 17th and October 15th, defendant demanded these same goods four or five times, and received nothing more until October 16th, when 3 cases were delivered. Again on October 15th defendant demanded that all the goods be delivered, and received only 1 case on October 21st. On November 3d 9 cases were delivered, and that was the largest single delivery under the contract and the last delivery made. There is no evidence of any breach of the contract by the plaintiff subsequent to that date.

[3-5] It is clear that, if the defendant considered plaintiff's prior refusals to deliver the quantity of goods demanded as breaches of the contract, it had the option either to rescind the sale as to the undelivered goods or to continue with the contract, in which case it might recover damages for failure to deliver in time. It could not, however, both affirm and rescind the contract. No notification was given to the plaintiff that the defendant elected to rescind the sale, but, on the contrary, further demands were made for deliveries, and, as shown above, 9 cases of the goods were delivered and accepted subsequent to the last alleged breach of the contract. Furthermore, the defendant showed clearly that it still regarded the contract as in force by writing a letter to the plaintiff on November 20, 1913, which made no mention of a rescission and stated:

"We are herewith inclosing you a check a/c for $1,000. You will also find inclosed a statement showing just what goods we have received up to the present date, and we trust that you will find same correct, which is all we owe you."

I am of the opinion, therefore, that the defendant waived the alleged breaches of the contract committed prior to that time, and its refusal to receive and pay for the balance of the order on December 5th and thereafter was unjustifiable.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.